THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DORRELL C. JACKSON, | * |
| Plaintiff, | * |
| v. | *   Civ. No.: MJM-22-3130 |
| WARDEN THOMAS L. WOLFE and SERGEANT SADIKU, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

Plaintiff Dorrell C. Jackson, an inmate at North Branch Correctional Institution filed this action against Warden Thomas L. Wolfe and Sergeant Yinka Sadiku (collectively, "Defendants") alleging that Defendants failed to protect him from harm while he was incarcerated at Chesapeake Detention Facility ("CDF").[1]  ECF Nos. 1, 10, 12.  Defendants filed an Answer on September 11, 2023.  ECF No. 21.  Currently pending is Defendants' Motion for Summary Judgment (the "Motion").  ECF No. 37.  The Court advised Jackson of his right to respond to the Motion.  ECF No. 33.  He was later granted additional time to respond.  ECF No. 36.  On January 2, 2025, Jackson filed a "Statement of Facts," which the Court construes as a response in opposition to Defendants' Motion.  ECF No. 37.  No hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2023).  For the following reasons, Defendants' Motion will be granted.

---

[1] The Clerk will be directed to amend the docket to reflect Sgt. Sadiku's full name.

I.      **Background**

    A. **Jackson's Complaint and Supplements**

At the time relevant to the Complaint, Jackson was a pretrial detainee in segregation at CDF.  ECF No. 1 at 2.  On September 7, 2022, Jackson had an argument with Sgt. Sadiku about using the phone.  ECF No. 10 at 1.  Sgt. Sadiku interrupted Jackson's 30-minute phone call to tell him to go take his shower during what remained of his recreation time.  ECF No. 12 at 1.  Jackson asserted that he still had a few minutes left for his call, and the two began arguing.  *Id.*  Sgt. Sadiku allegedly threatened Jackson that he could "get [Jackson's] ass kicked if he wanted to" and to "watch [his] back, im [sic] going to get your one handed ass wooped [sic]."  ECF No. 10 at 1–2. Later that day, Jackson was talking to another inmate during recreation when two other inmates "ran out the cell & jumped" him.  ECF No. 1 at 2; ECF No. 12 at 1.  Jackson asserts that. Sgt. Sadiku set him up to be assaulted because only he had control over the cell doors in the unit.  ECF No. 1 at 2.

Jackson states that he exited the shower in front of cell 42 and two inmates attacked him, punching and kicking him until he was unconscious.  ECF No. 12 at 2.  His head hit the concrete repeatedly during the assault.  ECF No. 10 at 1.  Jackson was sent to the University of Maryland Medical Center for treatment and later returned to CDF.  ECF No. 12 at 2; ECF No. 12-1 at 2–11.  In the subsequent days, he told medical staff that he did not feel well but did not receive any help.  ECF No. 12 at 2; ECF No. 12-1 at 1.  Sgt. Sadiku told Jackson to stop complaining and that he needed to stay segregated until his wounds healed.  ECF No. 12 at 2.  Days later, Sgt. Sadiku released Jackson back to general population and threatened to have him beat up again if he sought medical care, so Jackson did not seek help for his ongoing headaches or dizziness.  *Id.*  Jackson states that he suffered a traumatic head injury and concussion from the assault.  ECF No. 10 at 1.

2

In his Supplement, Jackson asserts that Warden Wolfe interfered with his ability to participate in this litigation. ECF No. 10 at 1. Specifically, he asserts that Warden Wolfe denied his requests for certain documents and told him he would have to have an attorney subpoena them. *Id.*; ECF No. 12 at 2.

Jackson seeks Sgt. Sadiku's arrest and monetary damages. ECF No. 1 at 3.

### B. Defendants' Response

An investigation was instituted by the Intelligence and Investigative Division ("IID") following the assault. Sgt. R. Lewis concluded that Jackson was assaulted by federal detainees Timothy Williams and Kevin Everett on September 7, 2022. ECF No. 32-3 at 3. Captain Nina Rizer reported to Sgt. Lewis that she reviewed surveillance video[2] and observed that Williams and Everett "breached their cell and ran up to Federal Detainee Jackson and began assaulting him." ECF No. 32-3 at 3. Once Jackson fell to the floor, Williams and Everett ran back to their cell and closed the door. *Id.* Staff did not witness the incident but saw their cell door close and went to review the video because only one cell should have been open at a time for recreation. *Id.* Jackson was taken to medical and sent to the University of Maryland Medical Center to have his lacerations and the contusions to his head examined. *Id.* He was alert and conscious when he left for the hospital. *Id.* CDF staff "found a string in the door track" that allowed Williams and Everett to open the door. ECF No. 32-3 at 3. Warden Wolfe avers that inmates at CDF had been known to use clothesline to jam their cell doors. ECF No. 32-9 at ¶ 6. Williams and Everett were escorted to medical before being moved to segregation and issued infractions. ECF No 32-3 at 3, 23, 33. Both detainees were sanctioned with 45 days in segregation. *Id.* at 4; ECF Nos. 32-6, 32-7.

---

[2] Captain Rizer also stated that the CDF recording system could not save or copy the video. ECF No. 32-3 at 4.

According to the Serious Incident Report, Jackson was found "laying at the bottom of the stairs bloody and was unable to explain what occurred." ECF No. 32-3 at 4, 39. Jackson told Sgt. Lewis that he did not remember the assault. *Id.* Jackson reported that he had been "fussing" with a correctional officer who threatened to have his "ass whipped;" he then went to take a shower and woke up in medical. *Id.* at 4. Warden Wolfe attests that Jackson did not inform any CDF staff that Sgt. Sadiku had threatened him before the assault. ECF 32-9 at ¶ 11. Sgt. Sadiku denies having any interaction with Jackson prior to the incident. ECF No. 32-11 at ¶ 7. He also was not aware of any previous relationship between Jackson and his attackers nor that they had obstructed their door in order to assault Jackson. *Id.* at ¶ 6. Sgt. Sadiku denies assisting the detainees by opening their door to allow the assault. *Id.* at ¶ 7.

## II.     Standard of Review

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment. *Id.* at 252. The Court "should not weigh the evidence." *Perkins*, 936 F.3d at 205

(quoting *Anderson*, 477 U.S. at 249). However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then summary judgment is appropriate. *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In ruling on a motion for summary judgment, this Court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

### III. Discussion

In the Motion, Defendants argue that the Court should enter summary judgment in their favor because they are entitled to Eleventh Amendment immunity,[3] Jackson failed to establish constitutional violations by Defendants, and Defendants are entitled to qualified immunity. ECF No. 32-1.

#### A. September 7, 2022 Assault

Defendants assert that Jackson has failed to establish either Defendants' personal participation in the assault or a claim for supervisory liability against Warden Wolfe.

In a suit arising under 42 U.S.C. § 1983, liability attaches only upon a defendant's personal participation in the constitutional violation, and the doctrine of respondeat superior generally does not apply. *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Liability of supervisory officials under § 1983 "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"

---

[3] Jackson's Complaint and Supplements are silent as to whether he sues Defendants in their official or personal capacities. The Court will construe Jackson's allegations against Defendants solely in their personal capacities. Therefore, Defendants' Eleventh Amendment immunity argument is inapplicable.

*Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).  To state a claim for supervisory liability under § 1983 based on a subordinate's conduct, a plaintiff must allege that (1) the supervisor had actual or constructive knowledge that the subordinate's conduct "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff" (2) the supervisor responded in a manner that was so inadequate that it showed "deliberate indifference to or tacit authorization" of the subordinate's conduct; and (3) there was "an affirmative causal link between the supervisor's inaction" and the plaintiff's constitutional injury.  *Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

The record does not support Jackson's allegation that Sgt. Sadiku personally facilitated the detainees' attack.  Jackson, without evidence, asserts that Sgt. Sadiku induced the two detainees to assault him on September 7, 2022, following an argument they had about the phone earlier in the day.  ECF No. 37 at 1.  Jackson offers nothing more than his belief and speculation that this occurred, as he did not see Sgt. Sadiku solicit or facilitate the attack.  Furthermore, Sgt. Sadiku avers that he did not have any interaction with Jackson that day and was outside the tier during the incident.  ECF No. 32-11 at ¶¶ 5, 7.  Neither Warden Wolfe nor Sgt. Sadiku were aware prior to the assault that the detainees had rigged their cell door to stay open.  Jackson asserts that if they had rigged the door, a light and alarm would have alerted the sergeant on duty that the door was still open. ECF No. 37 at 2.  However, he provides no evidence that this would have occurred or that Sgt. Sadiku was the officer in the control booth at that time.  The record presented to the Court suggests that the assault was coordinated by the assailants and neither Defendant was personally

6

involved. Therefore, Defendants are entitled to summary judgment on any claim they are liable for the assault.

Moreover, even if Sgt. Sadiku were personally liable, there is no evidence that Warden Wolfe was actually or constructively aware of Sgt. Sadiku's alleged misconduct. Therefore, Warden Wolfe could not have been deliberately indifferent to any misconduct by Sgt. Sadiku and is entitled to summary judgment on any claim of supervisory liability for the assault.

### B. Failure to Protect

A pretrial detainee may present a claim that his rights under the Due Process Clause of the Fourteenth Amendment were violated by a detention official's failure to protect him from attack by another detainee. *See, e.g.*, *Prigg v. Baltimore Cnty. Dep't of Corr.*, Civ. No. DLB-23-48, 2024 WL 1012885, at *5 (D. Md. Mar. 8, 2024). To prevail on such a claim, the plaintiff must show that he suffered an injury or risk of injury resulting from the defendant official's action or inaction, and that "the 'governmental action' they challenge" is not 'rationally related to a legitimate nonpunitive governmental purpose' or is 'excessive in relation to that purpose.'" *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015). A pretrial detainee may establish a Fourteenth Amendment claim "on [a] purely objective basis" because "*Kingsley*'s objective test extends to all pretrial detainee claims under the Fourteenth Amendment . . . for deliberate indifference to an excessive risk of harm." *Id.* at 610–11. The plaintiff need not show that the defendant had actual knowledge of the risk faced by the plaintiff, but he must "show that the defendant's action or inaction was . . . 'objectively unreasonable[.]" *Id.* at 611 (quoting *Kingsley*, 576 U.S. at 397). "[I]t is enough that the plaintiff show that the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 836

(1994)). "To be clear, it is . . . not enough for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee." *Id.* at 611–12 (citation omitted).

Nothing in the record shows that Sgt. Sadiku either knew or should have known that the detainees who attacked Jackson presented a risk to Jackson's safety or that Warden Wolfe knew or should have known that Jackson was at risk of harm. Jackson presents no evidence that Defendants were aware that the detainees had rigged their cell door to open on the day of the attack. Furthermore, Warden Wolfe had no knowledge of any argument between Jackson and Sgt. Sadiku, and Sgt. Sadiku denies that any such argument happened at all. Jackson presents no evidence to dispute or contradict Sgt. Sadiku's affidavit. As there is no material issue in genuine dispute, Defendants are entitled to summary judgment on Jackson's failure to protect claim.

### C. Access to Courts

To the extent, Jackson alleges that Warden Wolfe interfered with his access to courts, Warden Wolfe is entitled to summary judgment. Jackson's pleadings include general allegations that Warden Wolfe denied his request for documents related to this case. Jackson asserts that Warden Wolfe committed perjury by returning a letter from the Court to Jackson causing the Court to dismiss this case without prejudice. *See* ECF No. 7.

Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). However,

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355). "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349. Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Id.* at 399. Thus, a prisoner claiming he was denied access to the courts must ultimately prove he suffered an actual injury by showing that the defendant's acts hindered his ability to pursue a nonfrivolous legal claim. Conclusory allegations are not sufficient in this regard. *See Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006) (denying access to court claim based on allegation that petition for a writ of certiorari had, for unspecified reasons, been dismissed and where plaintiff did not even mention the point on appeal). The right of access to the courts is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

Importantly here, Jackson has not suffered any injury. This case was dismissed on December 21, 2022, following the return of mail sent to Jackson. ECF No. 5. However, upon his motion to reopen (ECF No. 7), the case was reinstated and litigation has continued. Thus, Jackson did not lose any meritorious legal claim as a result of the temporary dismissal of this case. Even if the letter had been intentionally returned, Warden Wolfe does not personally oversee the operations of the CDF mailroom and nothing in the record shows that he was responsible for returning the Court's letter. *See* ECF No. 32-9 at ¶¶ 14, 15. Rather, it seems that shortly following

9

the filing of this Complaint, Jackson was temporarily transferred to MTC to be isolated for Covid-19, which may have temporarily interfered with his receipt of mail.  ECF No. 32-8 at 12–18, 68–84; ECF No. 32-9 at ¶ 14.

As to Jackson's assertions that Warden Wolfe denied him certain documents, specifically the incident report and the video footage of the incident, the record does not support such a finding.  The serious incident report was provided to Jackson as part of Defendants' pending Motion, and thus it was available to him to rely upon in his opposition.  According to the IID report, the video footage of the incident was not available due to the capabilities of CDF's recording system, not due to any misconduct by Warden Wolfe.  The Court finds that Warden Wolfe is therefore entitled to summary judgment on any access-to-courts claim.

### IV.    Conclusion

For the reasons stated herein, Defendants' Motion for Summary Judgment is granted.[4]  Because Defendants are entitled to summary judgment, Jackson's request for counsel (ECF No. 37) is denied.  By separate Order to follow, judgment will be entered in Defendants' favor.

 __2/18/25__
Date

_____
Matthew J. Maddox
United States District Judge

---

[4] Because Defendants' Motion succeeds on the stated grounds, the Court need not address their qualified immunity argument.